J-S12017-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF: I.S., A MINOR | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: M. K., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 204 EDA 2022 |

Appeal from the Order Entered April 19, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001641-2019

| IN THE INTEREST OF: I.M.S., A MINOR | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: M. K., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 205 EDA 2022 |

Appeal from the Decree Entered April 19, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000099-2021

BEFORE:  BENDER, P.J.E., BOWES, J., and DUBOW, J.

MEMORANDUM BY BOWES, J.:                           **FILED JUNE 8, 2022**

In these consolidated cases, M.K. ("Mother") appeals *nunc pro tunc* from the decree involuntarily terminating her parental rights to her daughter, I.M.S., born in September 2019, and the order changing the child's permanency goal from reunification to adoption.  In addition, Mother's counsel has filed in this Court a petition to withdraw and an accompanying brief

pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009). We affirm and grant the petition to withdraw.

We begin with an overview of the relevant facts and procedural history. Mother had participated in a methadone program for seven years prior to and throughout her pregnancy with I.M.S. N.T., 4/19/21, at 80-81. Nonetheless, she relapsed three times during the pregnancy, and I.M.S.'s meconium contained methadone and opiates after her birth. *Id*. at 72, 80-81. As a result of her prenatal exposure to drugs, I.M.S. suffered from neonatal abstinence syndrome, *i.e.*, withdrawal, and she was transferred to the Neonatal Intensive Care Unit ("NICU"). *Id.* at 28, 66-68, 71-72. I.M.S. experienced vomiting, diarrhea, sleep difficulties, tremors, and prolonged crying. *Id*. at 66. She needed a feeding tube to eat because she was not receiving enough calories from bottle feeding. *Id*.

I.M.S. spent six weeks in the NICU. On October 21, 2019, when I.M.S. was ready for discharge, the Philadelphia Department of Human Services ("DHS") obtained a protective custody order from the Family Court of Philadelphia County and removed her from Mother's custody. DHS then filed a dependency petition, citing concerns regarding Mother's ongoing substance abuse, suspected intimate partner violence between Mother and C.S. ("Father"), and Mother's housing instability. On October 30, 2019, the trial court adjudicated I.M.S. dependent pursuant to 42 Pa.C.S. § 6302(1) of the

Juvenile Act. The trial court ordered Mother to participate in random drug screening and services for dual diagnosis (*i.e.*, substance abuse and mental health), parenting, housing, and employment. The court permitted Mother to have visitation with I.M.S. under supervision.

On February 22, 2021, sixteen months after I.M.S. entered foster care, DHS filed a petition to terminate Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).[1] It also filed a petition seeking to change I.M.S.'s permanency goal from reunification to adoption.

The trial court conducted a joint hearing on DHS's petitions on April 19, 2021. At the time of the hearing, I.M.S. was nineteen months old and represented by Joshua Weil, Esquire.[2] DHS presented the testimony of

---

[1] DHS also filed a petition to terminate involuntarily Father's parental rights. The court conducted a joint hearing on the petitions and ultimately terminated Father's parental rights as well as Mother's. Father did not file an appeal or participate in Mother's appeal.

[2] Our Supreme Court has instructed this Court to verify *sua sponte* that the trial court appointed counsel to represent a child's legal interest in a contested termination of parental rights hearing pursuant to 23 Pa.C.S. § 2313(a), and if counsel served in a dual role as guardian *ad litem*, that the trial court determined before appointment that there was no conflict between a child's best and legal interests. ***See In re Adoption of K.M.G.***, 240 A.3d 1218 (Pa. 2020). If a child is "too young to be able to express a preference as to the outcome of the proceedings," there is no conflict between a child's legal and best interests. ***See In re T.S.***, 192 A.3d 1080, 1092-93 (Pa. 2018).

During the joint evidentiary hearing, after Attorney Weil entered his appearance on I.M.S.'s behalf as "GAL and Child Advocate," Mother requested that the court appoint legal counsel for I.M.S. N.T., 4/19/21, at 10-11. Citing ***T.S.***, ***supra***, the court ultimately denied Mother's request. ***Id***. at 11. It

*(Footnote Continued Next Page)*

Spencer Vaye, who was a case manager from the Community Umbrella Agency ("CUA") that DHS assigned to work with the family. It also presented the testimony of J.E. ("Foster Mother"), who, along with her husband, has been providing foster care to I.M.S. since her discharge from the NICU. Finally, Mother testified on her own behalf. After placing findings of fact on the record, the court announced its decision to grant DHS's petition under all subsections pleaded. It entered a formal decree the same day. It also entered a court order in the dependency matter changing I.M.S.'s permanency goal from reunification to adoption.

One day after the appeal period expired, Mother's counsel filed petitions at the adoption docket and the dependency docket requesting to file an appeal *nunc pro tunc*. The trial court denied the petitions, and Mother appealed to this Court. Holding that Mother's counsel was *per se* ineffective in failing to file timely notices of appeals, this Court reversed the trial court's orders denying the petitions for *nunc pro tunc* relief and remanded for reinstatement of Mother's appellate rights and appointment of new counsel. **Interest of I.M.S.**, 267 A.3d 1262, 1267 (Pa.Super. 2021).

On remand, the trial court reinstated Mother's appellate rights and appointed Claire Leotta, Esquire, to represent Mother. Attorney Leotta filed

_____

determined that one-year-old I.M.S. was unable to communicate her preference and understand the termination proceedings. **Id**. at 11-14. Attorney Weil concurred in the court's assessment. **Id**. at 12. Given I.M.S.'s age, the trial court complied with **T.S.**, **supra**, and **K.M.G.**, **supra**.

the instant notices of appeal *nunc pro tunc* together with a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). On January 25, 2022, the trial court issued an order referring this Court to its statements in the record at the conclusion of the hearing in lieu of a written opinion pursuant to Pa.R.A.P. 1925(a). Attorney Leotta then filed a petition to withdraw and an accompanying *Anders* brief in this Court. Mother has not filed a response.

We begin by addressing the petition to withdraw and *Anders* brief filed by Mother's counsel. *See Commonwealth v. Rojas*, 874 A.2d 638, 639 (Pa.Super. 2005) ("'When faced with a purported *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.'") (citation omitted); *see also In re V.E.*, 611 A.2d 1267 (Pa.Super. 1992) (extending the *Anders* procedure to appeals from involuntary termination decrees).

To withdraw pursuant to *Anders*, counsel must:

1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [*Anders*] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa.Super. 2013) (*en banc*) (citation omitted).

With respect to the third **Anders** requirement, this Court has held counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." **Commonwealth v. Millisock**, 873 A.2d 748, 752 (Pa.Super. 2005).

Additionally, the Pennsylvania Supreme Court has directed that **Anders** briefs must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, **supra**, at 361.

Here, Attorney Leotta avers in her petition to withdraw that she has determined Mother's appeal is frivolous after conducting a thorough and conscientious examination of the record. Attorney Leotta avers she mailed Mother a letter explaining her rights and has attached a copy of the letter to the petition to withdraw and **Anders** brief. Attorney Leotta's letter complies with our law, as it informs Mother that she may retain new counsel or proceed *pro se* and raise any additional arguments she deems worthy of our attention. Attorney Leotta's **Anders** brief includes a summary of the facts, procedural history of this case, two issues that could arguably support Mother's appeal, and an assessment of why those issues are frivolous, with citations to the record and relevant legal authority. As Attorney Leotta has complied

- 6 -

substantially with **Anders**, we review the issues presented in her brief. We also "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." **Commonwealth v. Flowers**, 113 A.3d 1246, 1250 (Pa. Super. 2015); **see also Commonwealth v. Dempster**, 187 A.3d 266, 272 (Pa. Super. 2018) (*en banc*) (describing our duty as a "simple review of the record to ascertain if there appear on its face to be arguably meritorious issues that counsel, intentionally or not, missed or misstated").

Attorney Leotta identifies two issues for our consideration.

1. Whether the Department of Human Services (DHS) failed to prove by clearing [*sic*] and convincing evidence that [M]other's parental rights should have been terminated pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5) and (8) since she had substantially completed her objectives as required?

2. Whether there was a strong emotional and parental bond between [Mother and I.M.S.] which would have had a negative effect on [I.M.S.] if the parental bond was permanently severed?

**Anders** brief at 5.

We review these issues mindful of our well-settled standard of review. "In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence." **In re Adoption of C.M.**, 255 A.3d 343, 358 (Pa. 2021). When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. **Interest of S.K.L.R.**, 256 A.3d 1108, 1123

(Pa. 2021). "Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion." **In re Adoption of L.A.K.**, 265 A.3d 580, 591 (Pa. 2021).

"[A]n abuse of discretion does not result merely because the reviewing court might have reached a different conclusion" or "the facts could support an opposite result." **In re Adoption of S.P.**, 47 A.3d 817, 826-27 (Pa. 2012). Instead, an appellate court may reverse for an abuse of discretion "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." **Id**. at 826. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings. **Interest of S.K.L.R.**, **supra**, at 1123-24.

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental "right to make decisions concerning the care, custody, and control" of his or her child with the "child's essential needs for a parent's care, protection, and support." **C.M.**, **supra**, at 358. Termination of parental rights has "significant and permanent consequences for both the parent and child." **L.A.K.**, **supra**, at 591. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so "clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear

conviction, without hesitance, of the truth of the precise facts in issue." ***C.M.***, ***supra***, at 359 (citation omitted).

Termination of parental rights is governed by § 2511 of the Adoption Act. "Subsection (a) provides eleven enumerated grounds describing particular conduct of a parent which would warrant involuntary termination." ***C.M.***, ***supra***, at 359; ***see also*** 23 Pa.C.S. § 2511(a)(1)-(11). In evaluating whether the petitioner proved grounds under subsection 2511(a), the trial court must focus on the parent's conduct and avoid using a "balancing or best interest approach." ***Interest of L.W.***, 267 A.3d 517, 524 n.6 (Pa.Super. 2021). If the trial court determines the petitioner established grounds for termination under subsection 2511(a) by clear and convincing evidence, the court then must assess the petition under subsection 2511(b), which focuses on the child's needs and welfare. ***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013).

We analyze the court's decision pursuant to § 2511(a)(8) and (b) of the Adoption Act:[3]

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child

---

[3] This Court need only agree with any one subsection of § 2511(a), in addition to § 2511(b), in order to affirm the termination of parental rights. ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*).

continue to exist and termination of parental rights would best serve the needs and welfare of the child.

. . . .

**(b) Other considerations**.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(8), (b).

To satisfy § 2511(a)(8), the petitioner must show three components: (1) that the child has been removed from the care of the parent for at least 12 months; (2) that the conditions which led to the removal or placement of the child still exist; and (3) that termination of parental rights would best serve the needs and welfare of the child. *In re Adoption of J.N.M.*, 177 A.3d 937, 943 (Pa.Super. 2018).

Unlike other subsections, § 2511(a)(8) does not require the court to evaluate a parent's willingness or ability to remedy the conditions that led to the placement of the children. *In re M.A.B.*, 166 A.3d 434, 446 (Pa.Super. 2017). "[T]he relevant inquiry" regarding the second prong of § 2511(a)(8) "is whether the conditions that led to removal have been remedied and thus whether reunification of parent and child is imminent at the time of the hearing." *In re I.J.*, 972 A.2d 5, 11 (Pa. Super. 2009). Further, the Adoption

Act prohibits the court from considering, as part of the § 2511(a)(8) analysis, "any efforts by the parent to remedy the conditions described [in the petition] which are first initiated subsequent to the giving of notice of the filing of the petition." 23 Pa.C.S. § 2511(b).

Although § 2511(a) generally focuses on the behavior of the parent, the third prong of § 2511(a)(8) specifically "accounts for the needs of the child." **In re C.L.G.**, 956 A.2d 999, 1008-09 (Pa.Super. 2008) (*en banc*). This Court has recognized "that the application of [§ 2511(a)(8)] may seem harsh when the parent has begun to make progress toward resolving the problems that had led to the removal of her children." **In re Adoption of R.J.S.**, 901 A.2d 502, 513 (Pa.Super. 2006).

> However, by allowing for termination when the conditions that led to removal of a child continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time, to wit [18] months, in which to complete the process of either reunification or adoption for a child who has been placed in foster care.

**Id**.

Instantly, the trial court determined that DHS removed I.M.S. from Mother's custody due to Mother's substance abuse more than a year before DHS filed the petition to terminate parental rights, the conditions leading to removal continued to exist because Mother had only recently begun

- 11 -

addressing some of the circumstances that brought I.M.S. into care, and termination of Mother's parental rights met I.M.S.'s needs and welfare because Mother has not established stability to care for I.M.S., particularly with I.M.S.'s medical needs. N.T., 4/19/21, at 103-111. The trial court recognized that Mother had made some progress, but concluded DHS proved that Mother's recent sobriety and erratic lifestyle were still too unstable. *Id*.

In arriving at this conclusion, the court relied upon the following facts, all of which are supported by the certified record. As described *supra*, DHS removed I.M.S. upon her discharge from the NICU, where she spent six weeks suffering from opiate withdrawal. Mother visited I.M.S. twice under supervision early in her dependency. *Id*. at 52. On January 22, 2020, Mother was informed I.M.S. required surgery to correct a tongue tie that was causing significant difficulty with her feeding. The trial court provided Mother with seven days to contact I.M.S.'s doctor, but she did not do so. *Id*. at 36, 95. I.M.S.'s surgery was delayed in part because DHS had to obtain an order from the trial court permitting DHS to consent to the surgery in Mother's absence. *Id*. at 37, 46-47.

After the January 2020 review hearing, Mother's whereabouts were unknown to DHS for nine months. During this time, Mother did not visit with I.M.S. Similarly, although Mother admitted that she had the case manager's contact information, she did not contact the agency. *Id*. at 96. According to Mother's testimony, she had been evicted from her house and was homeless

without a phone during this time. *Id*. at 90. Mother did not resurface until October 2020, when she enrolled in an inpatient substance abuse program at the Kirkbride Center in Philadelphia. She did not inform DHS of this development. DHS only learned Mother had enrolled at Kirkbride through I.M.S.'s maternal uncle. *See id*. at 51-52. This program was Mother's first attempt at drug treatment since I.M.S. was born addicted to opiates thirteen months earlier.[4] *Id*. at 51, 81. She then transitioned to a recovery facility at Joy of Living on December 15, 2020. *Id*. at 34, 81, 96. Mother was six months clean at the time of the evidentiary hearing, but she was still at Joy of Living and was not yet living independently in the community. *Id*. at 85, 88, 93.

Mother did not engage mental health counseling, despite the court-ordered requirement that she receive both mental health and substance abuse counseling. *Id*. at 36, 64-65. Moreover, she made little progress on her court-ordered goal to enroll in parenting, she only attended one class one week before the hearing, which obviously was after DHS filed the petition. *Id*. at 92-93. At the time of the hearing, Mother was unemployed and had no income. *Id*. at 36. Although she was approved to obtain housing through the Joy of Living program, she had not acquired it yet. *Id*. at 89. Finally, in

---

[4] Mother had been enrolled in a methadone program for seven years prior to I.M.S.'s birth. It is unclear from the record whether she continued to attend, but even if she did, this program did not prevent her from relapsing during her pregnancy.

addition to the two visitations that Mother attended early in the case, she visited I.M.S. only two other times: a virtual visit on February 25, 2021, and an in-person supervised visit on March 12, 2021. *Id.* at 44, 52, 86.

Based upon these facts, we discern no abuse of discretion or error of law in the trial court's conclusion that the conditions leading to I.M.S.'s removal continued to exist more than twelve months after her removal. While Mother finally confronted her persistent substance abuse, the remaining conditions were largely unaddressed. Her visitations with I.M.S. and her contact with service providers continued to be sporadic, and Mother did not progress toward her court-ordered parenting goal, find employment, or address her mental health problems. Ultimately, Mother has not demonstrated a measure of stability that would support a finding that she is capable of overcoming the impediments to caring for I.M.S. or addressing the child's medical needs. As the court was within its discretion to decline to subordinate I.M.S.'s need for permanency in order to provide Mother more time to remedy the remaining conditions, we do not disturb its determination. *See R.J.S.*, *supra*, at 513.

We turn now to subsection (b), which requires the court to "give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). "The emotional needs and welfare of the child have been properly interpreted to include intangibles such as love, comfort, security, and stability." *T.S.M.*, *supra*, at 628 (citation and

quotation marks omitted). Our Supreme Court has made clear that § 2511(b) requires the trial court to consider the nature and status of bond between a parent and child. *In re E.M.*, 620 A.2d 481, 484-85 (Pa. 1993). It is reasonable to infer that no bond exists when there is no evidence suggesting the existence of one. *See In re K.Z.S.*, 946 A.2d 753, 762–63 (Pa.Super. 2008). To the extent there is a bond, the trial court must examine whether termination of parental rights will destroy a "necessary and beneficial relationship," thereby causing a child to suffer "extreme emotional consequences." *E.M.*, *supra*, at 484-85.

"While a parent's emotional bond with his or her child is a major aspect of the [s]ubsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child." *In re M.M.*, 106 A.3d 114, 118 (Pa.Super. 2014). "In addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent." *Id*. In determining needs and welfare, the court may properly consider the effect of the parent's conduct upon the child and consider "whether a parent is capable of providing for a child's safety and security or whether such needs can be better met by terminating a parent's parental rights." *L.W.*, *supra*, at 524.

- 15 -

Furthermore, our Supreme Court has stated, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *T.S.M.*, *supra*, at 268. The Court directed that, in weighing the bond considerations pursuant to § 2511(b), "courts must keep the ticking clock of childhood ever in mind." *Id*. at 269. The *T.S.M.* Court observed, "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id.*

The trial court determined that DHS proved its burden under subsection 2511(b). N.T., 4/19/21, at 109-11. Over the 18 months that I.M.S. spent in foster care, she had only four visits with Mother, including three in-person visits. As such, the court determined there was no parent-child bond formed during this minimal contact, and therefore, no detrimental effect on I.M.S. if the court terminated Mother's parental rights. *Id*. at 109. By contrast, the court found there was a bond between Foster Mother and I.M.S. *Id*. The court observed Foster Mother has cared for I.M.S. since her birth, first as her nurse in the NICU, and then as her foster parent since I.M.S. was six weeks old. *Id*. The court credited the testimony of Mr. Vaye, who assessed the bond between Foster Mother and I.M.S. as "perfect." *Id*. at 110.

The certified record supports the court's determination. Based on these circumstances, the court was within its discretion to conclude that no

meaningful bond existed between Mother and I.M.S. I.M.S.'s foster parents are willing to adopt her, and she has only experienced their parental care. In addition to their emotional support, foster parents ensured I.M.S. received early intervention services and helped her work with a speech pathologist and physical therapist. *Id*. at 67-68. Additionally, they ensured that I.M.S. did not aspirate while eating prior to her tongue surgery, cared for her after the surgery, and continue to consult with her dentist about the need for a second surgery. *Id*. at 68-70.

Given I.M.S.'s young age, her lack of contact with Mother, her bond with her foster parents, and the foster parents' ability to attend to her medical needs, the trial court did not abuse its discretion in choosing to protect I.M.S.'s relationship and stability with foster parents. *See In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008) ("[W]e agree with the court that the bond between K.Z.S. and [his foster parent] is the primary bond to protect, given [the child's] young age and his very limited contact with [his mother]."). Thus, based upon the foregoing, we agree with counsel that a challenge to the sufficiency of evidence to support the trial court's decision to terminate Mother's parental rights pursuant to subsections 2511(a) and (b) is frivolous.

Finally, in light of our duty to review the record for any arguably meritorious issues, we observe that although Attorney Leotta filed an appeal from the permanency review order changing I.M.S.'s permanency goal to adoption, Attorney Leotta did not discuss whether there is an arguably

meritorious issue relating to the goal change. Nevertheless, this issue also is patently frivolous.

We review decisions changing a placement goal for an abuse of discretion. *In re R.J.T.,* 9 A.3d 1179, 1190 (Pa. 2010). When considering a petition for a goal change for a dependent child, the trial court must determine the matters set forth at 42 Pa.C.S. § 6351(f) of the Juvenile Act, *i.e.* the appropriateness, feasibility, and likelihood of attaining the current goal, Mother's progress, child's safety, *etc.* *In re S.B.*, 943 A.2d 973, 978 (Pa.Super. 2008). In making these determinations, the best interests of the child, and not the interests of the parent, must guide the trial court. *In re A.B.*, 19 A.3d 1084, 1088-89 (Pa.Super. 2011).

Stated plainly, we find no non-frivolous issues to support Mother's appeal from the order changing I.M.S.'s placement goal from reunification to adoption. Mother has been absent from I.M.S.'s life. She was not there for I.M.S. when the child required medical treatment. In the parental void created by Mother's absence and her later efforts to stabilize her life, I.M.S. has bonded to her foster parents, and is safe, stable, and secure in their care. Accordingly, we would discern no abuse of discretion.

As our independent review of the record reveals no non-frivolous issues, we affirm the decree terminating Mother's parental rights and the order changing I.M.S.'s permanency goal from reunification to adoption, and grant counsel's petition to withdraw.

Decree affirmed. Goal change order affirmed. Petition to withdraw granted.

Judge Dubow did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/08/2022